Grassman v. Bonn.

---

EDWARD GRASSMAN, assignee &c.,

*v.*

JOHN H. BONN and others, commissioners.

A contract for an extensive public work provided that the commissioners might retain fifteen per cent. of the contract price and forfeit it if the contractor failed to finish the work. On his failure to do so, without the fault of the commissioners,—*Held,*

(1) That the entirety of such contract was not affected by the fact that payment for the work done was to be made in installments.

(2) That it was not inequitable to enforce such forfeiture.

Grassman *v.* Bonn.

(3) That the subsequent completion of the work by the contractor's sureties to protect themselves from loss through his dereliction, was not a fulfillment of his obligation so as to save the forfeiture.

(4) That the commissioners, at the contractor's request, applied a part of such fifteen per cent. to pay debts due from him to material-men and laborers on the work, gave his assignee, under an assignment for the benefit of creditors, no claim to the balance of the fifteen per cent.

(5) That even if the commissioners exceeded their powers in advancing money to the contractor before the work therefor had been actually done, that would not prevent their repaying such advances to themselves by retaining in their hands money due to him, under his express agreement.

———

Bill for account &c.   On final hearing on bill and answer.

*Mr. M. W. Niven* and *Mr. J. W. Vroom,* for complainant.

*Mr. R. Gilchrist,* for defendants.

THE CHANCELLOR.

Thomas H. Niven and John A. Middleton entered into a contract, dated November 7th, 1874, with the defendants, who are the Bull's Ferry road commissioners, to do certain work (road and sewer construction) for them, finding the materials therefor; the price to be paid in monthly install-ments as the work progressed, and the installments to be based on monthly estimates made by the defendants' engineer, of eighty-five per cent. of the work done at the time.   The like percentage was to be paid at the completion and acceptance of the work on the price of the work on which the percentage had not been paid, and of the remain-ing fifteen per cent., two-thirds were to be paid in six months, and the rest in twelve months, after the date of the final certificate of the engineer.   The contractors entered upon the performance of the work, but discontinued it, while it was still unfinished, on the 19th of March, 1875. On the 31st of that month, Middleton assigned his interest in the contract to Niven, who entered into an agreement

with the defendants, dated April 13th, 1875, by which he agreed to complete the contract, and they agreed to accept him as sole contractor accordingly. By that agreement they agreed to pay him for the work and materials in the manner and in the medium specified in the original contract, and he expressly agreed to prosecute the work to the satisfaction of the defendants, and that, in case the quality or prosecution thereof should not be fully to their satisfaction, or in case they were not satisfied that the workmen to be employed on the work were paid promptly, or in case no arrangement was made by him satisfactory to the defendants for the payment of materials furnished or to be furnished for the work, then, after five days' written notice served on him, they might discharge him from their employment and declare the original contract and that agreement forfeited, and might declare all claims on his part, beyond the eighty-five per cent. of the final estimate, which was to be made immediately after the forfeiture, to be null and void, and might call on his sureties under the agreement to enter into a contract to do the work and furnish the materials which he had agreed to do and furnish, and if they should finish the work they should have the same price which he would have been entitled to, but if they refused, the defendants were to be at liberty to employ another person or persons to complete the work, and he and his sureties were to pay to the defendants any excess over the price agreed to be paid to him which they might be compelled to pay such other person or persons for completing the work.

Niven proceeded with the work under the agreement until December 29th, 1875, when he abandoned it, it being still unfinished. A few days prior to that date he made an assignment to the complainant for the benefit of his creditors. His sureties, by an agreement dated January 22d, 1876, agreed with the defendants to finish the work for the price payable by the original contract, and did so accordingly, to the satisfaction of the latter.

When the agreement between Niven and the defendants for the completion of the work by him alone was made, they, at his request, advanced to him, on the security of the pledge of the materials lying along the line of the improvement, $4,000, to enable him to pay arrears of wages due laborers. Of this sum he repaid to them only $1,100. The work on the main sewer, which was part of the work which he contracted to do, was suspended from about the middle of August, 1875, until the 5th of November following, in order to enable the defendants to ascertain whether a project for extensions of the sewer would be adopted. The project, if adopted, would have necessitated an enlargement of a considerable part of the sewer not then built. For his damages for this stoppage, he, at first, claimed nearly $10,000, but afterwards proposed to accept $5,000 in satis-. faction. He subsequently reduced his claim from $5,000 to $3,000. The defendants were advised by their counsel that he was entitled to compensation, and the result was that in a few days afterwards Niven sent to the defendants a formal offer in writing to accept $3,000 in full settlement of his claims for damages arising from the stoppage of the sewer work, the extra cost of building a culvert, his claim for extra allowance on certain receiving basins and capping, claims for certain excavation in the sewer trench, and in full settlement of claims to date arising from delay or from extra work done in any and all cases not theretofore included in the engineer's estimates. The defendants accepted the offer, provided it should be approved of in writing by all of his sureties, and that the $3,000 should be paid in the installments as they became due. When Niven finally discontinued the work, he left unpaid wages to laborers employed by him thereon. His assignment to the complainant, for the benefit of his creditors, is dated December 21st, 1875. On the day previous to that date he sent to the defendants his written request that they would pay to the laborers employed by him, and to his sub-contractors, the amounts due them out of the moneys in the hands of the

Grassman *v.* Bonn.

defendants, or to become due to him under the contract, and further requested that if any money should remain after such payments, they would pay it *pro rata* to those who had furnished block stone.   On or about the 24th of December, and after that date, the defendants, in pursuance of that request, paid to the laborers their wages, taking from them an assignment (with power of attorney to collect) of their claims and all lien by virtue thereof.   The greater part of those claims so paid have been presented by the defendants to the complainant, under the assignment to him.

After the work was finally discontinued by Niven, and before the sureties entered upon the work of completing the contract, the defendants were compelled to take measures at some cost to protect the work.   When the sureties entered into the agreement to complete the work, they gave to the defendants their consent in writing, that the defendants might pay all laborers and materialmen whose claims remained unpaid, for work done and materials furnished subsequently to the contract of April 13th, 1875 (Niven's), out of the unpaid fifteen per cent. then as yet unpaid and out of the eighty-five per cent. then as yet unpaid, for work and materials and other performance of the contract as far as it had then been performed by Niven and Middleton together or by the former alone, and that the materials furnished prior to the date of the contract of April, 1875, might also be paid for out of the fifteen per cent. or the balance thereof when earned by the completion of the contract, the eighty-five per cent. to be first exhausted in such payments. And, subject to such payments, the defendants then assigned to the sureties the fifteen per cent. of the remuneration for work theretofore done and materials furnished by Niven or by Niven and Middleton under the contracts which would have become due to Niven if he had completed the work.

The foregoing statement contains all the material facts of the case—quite all that it is necessary to take into consideration in deciding the questions submitted.   Those questions which, under the conclusions I have reached, it is necessary

to decide, are, first, whether the complainant, as assignee of Niven, is entitled to an account for the balance of the contract price, including the fifteen per cent. for the work done and materials furnished by Niven and Middleton, and by Niven alone, which was unpaid at the time of making the assignment for the benefit of creditors; second, whether, in such account, if allowed, the defendants are entitled to an allowance of the unpaid balance of the loan of $4,000; and, third, whether the defendants have the right to retain, out of the money payable to Niven under the contract, the money paid by them to laborers for wages in pursuance of his request of the 20th of December.   If these questions be decided in favor of the defendants, there will be no account, for it appears that in that case nothing would be due to the complainant if an account were taken.

The right of Niven or his assignee to an account for the eighty-five per cent. is not questioned, but their right to an account for the fifteen per cent. is denied on the ground that, by the declaration of the defendants, duly made under the provisions of the contract of April 13th, 1875, between Niven and them, and by their discharging him and his assignee from employment under the contracts, and declaring that their claim to the fifteen per cent. was null and void, and by the failure of Niven or his assignee to complete the contract, the fifteen per cent. was forfeited, and the complainant has no title or claim, legal or equitable, thereto.

By the original contract no forfeiture was, in terms, provided for, but no more than eighty-five per cent. of the contract price was payable until after the completion of the work.   By the contract made with Niven alone, he agreed to be bound by all the provisions of the original contract, and he expressly agreed that there should be a forfeiture of the fifteen per cent. in certain events therein specified. The object of the forfeiture was to secure the satisfactory performance of the work according to the contract, and the payment of the laborers and the security of those furnishing materials.   This provision for the payment of laborers was

necessary to insure the safety of the work, it being liable, in case of non-payment of the wages of the laborers, to destruction by them in revenge. The work has been finished to the satisfaction of the defendants by the sureties of Niven, and at the same price to which Niven would have been entitled had he completed it. The defendants do not now need protection against any claim of laborers or materialmen. It has been adjudged, in this cause, that they are not liable at law or in equity for any of the debts contracted by the contractors not assumed by them. *Grassman* v. *Bonn, 3 Stew. 490.*

That the work on the sewer was suspended from about the middle of August to the 5th of November, cannot be doubted. The report of the engineer of the defendants on the subject of Niven's claim for damages on that account, leaves no room for doubt. But Niven settled his claim for damages on that account, and it does not appear, in any way, that the stoppage was the occasion of his failure to finish the work, or to pay the laborers, or secure the materialmen. There was, on the part of the defendants, a strict observance of the provisions of the agreement of April 13th, 1875, on the subject of the forfeiture. They omitted nothing that was necessary to effectuate the forfeiture under the agreement. The fifteen per cent. was not due, by the terms of the original contract, until after the work was completed, and Niven never completed it. He, therefore, was not entitled to the fifteen per cent. *Hennessy* v. *Farrell, 4 Cush. 267 ; Faunce* v. *Burke, 16 Pa. St. 459.* The contract was entire, notwithstanding the fact that payment was to be made in installments as the work progressed. *Hennessy* v. *Farrell, ubi supra ; School Trustees* v. *Bennett, 3 Dutch. 513 ; Phelan* v. *Albany R. R. Co., 1 Lans. 258.* It was an agreement expressly to do the whole of the work, and part of the compensation was not to be payable until after the completion of the whole of the work.

But, again, Niven expressly agreed that the defendants, in a contingency (which happened), might discharge him

4

and annul his claim to the fifteen per cent., and they did so. If his failure to complete the work, or to pay the laborers, or make satisfactory arrangement for the payment of the claims of the materialmen, was in any way attributable to the defendants, it does not appear.

There is no reason why this court should not recognize the obligation of the contracts under consideration. It is quite probable that, unless Niven had agreed to the special terms of forfeiture before referred to, he could not have obtained the opportunity to proceed with the work which was given him by the contract of April 15th, 1875, and there appears to be no reason why his assignee should not be held to the agreement. In *Faunce* v. *Burke* such a provision was regarded as a provision for liquidated damages, and not as a penalty or forfeiture. No equitable ground of relief from the provision under consideration is presented. It is enough, however, to say that the fifteen per cent. is not payable, according to the agreement.

But it is urged that the contract was completed by the sureties, and that they are to be regarded as having done the work for Niven. But, in fact, they did it for themselves, to protect themselves from loss by reason of his default. That the defendants saw fit to apply the fifteen per cent. to the payment of wages and claims of materialmen, and to assign any balance of it which might remain after such application, to the sureties, would not in anywise give the complainant a claim to it. If it was forfeited, it was due to nobody; the price payable for the work done was so much less.

The defendants, in April, 1875, lent to Niven, as before stated, $4,000 to enable him to pay the wages of laborers. Of this sum he has repaid them $1,100, and the rest is due. There can be no doubt that they are entitled to repayment from him of that balance and interest, and may lawfully retain it out of any money coming to him in their hands. The complainant resists this claim on the ground that, in making the loan or advance, the defendants exceeded their powers as commissioners. By the instrument given to the commissioners to secure the repayment of the advance,

Niven " agreed and consented " that they might retain so much money, from each estimate that might become due upon his contract with them, as to them might seem meet and proper until they should be reimbursed the full principal and interest of the advance.

The letter of the 20th of December, 1875, by which Niven requested the defendants to make payments to laborers, sub-contractors and certain materialmen, was authority to them to apply the moneys in their hands, coming to him, to those purposes, and they were at liberty so to apply it, and, for their protection in the payments, they could lawfully take the assignments which they took from the laborers, and are entitled to the benefit of them accordingly.

There will be no decree for an account, and the bill will be dismissed, with costs.